Good morning, your honors. My name is Peter Esser and I'm representing Ron Yonemoto. Ron is a 30-year veteran of the Navy who has worked for the last 10 years at the Veterans Association, Department of Veterans Affairs. And he filed a complaint four years ago, a FOIA complaint. His concern was that high officials at VA in the Pacific Islands Health Care System, which is a division of VA here, were using their government computers to send e-mails to other employees and themselves, exchanging e-mails that contained a number of hate speech type statements. There are a certain number of e-mails, and there were a great number of e-mails, that had specific statements. There are other e-mails that supported and explained the discussion, what the background issues were that were involved. But the primary hate speech involved, and Ron Yonemoto is a Japanese-American born and raised in Hawaii. He has an MBA and a JD. And he's worked for the VA for about 10 years. The people who made these statements were high officials in the VA in Hawaii. And they said things like, horse's ass, screw him, mean little toady, Ronnie Yonnie, big fat toad. Ronnie Yonnie is going down. All Chinese rubberneck team, which of course makes no sense because he's Japanese. These statements were not only directed at Ron, they were also directed at other people, other employees. One in particular, Daniel Bouland, who they referred to as Danny Boy, who is a high ranking official at Pacific Islands. What he did is he filed a complaint after requesting these e-mails. He got some of the e-mails. It's disputed as to what he got. And there isn't much of a record in front of this court in terms of that. So the primary focus is on the 200 that were discussed on remand. Because this case came up to the Ninth Circuit a couple of years ago. And just before oral argument, the VA turned over the four test case e-mails containing these words I just said to you, and essentially sabotaged the appeal. So it went back down. And they then offered to turn over 157 more, not as a FOIA disclosure, and expressly stated that, but to him as a VA employee, which would keep him from disclosing them to anyone else. He declined to accept them. Is it undisputed that if they're given to him only, quote, in his capacity as a VA employee, close quote, that he cannot disclose them? It is not disputed. But we claim and cite in the opening brief a regulation that specifically bars any VA employee from distributing any e-mails or any private records from the VA. So yes. I guess we can ask the VA whether he can do with these e-mails now exactly what he could do with them if he got them from under FOIA. And if the answer is yes, I guess we'll hold the VA to it. Well, the only thing I would object to a little bit for that question like that is I'd like this Court to restrict itself to the record. And one of the concerns I have is there is very little record in this case. And it's their burden moving forward to establish these exemptions. And frankly, there isn't any response to the argument that these were not to be disclosed. Because at the hearing below, counsel for the VA got up and said, we didn't want the public knowing about this stuff. And their argument in the first appeal in the answering brief was this would embarrass these VA officials. So the position they've taken is that this disclosure that was offered, and Judge Curran knew this, they were offered specifically as a non-public disclosure. And as Your Honor knows, FOIA disclosures are never non-public. They are always public. There's no such thing as a selective disclosure under FOIA. So we take the position, and by the way, you have to look at the fact below, that the government did not even argue that they were moot. They did not argue there was a waiver. And they did not argue that they were moot. The government attached an amended description of these 175 emails trying to justify every single one under 2, 5, and 6 exemptions. Didn't the government say in the hearing that the reason that they wanted to do it this way is so that in its capacity as an employee, because we don't think it's appropriate to publicize them to the world? Well, and Your Honor, which are The whole premise of what they were doing was that it wasn't to be publicized to the world. Which precisely makes it not a FOIA disclosure. Every single case describing what FOIA is about says it's about public disclosure. How can you possibly have a government disclosure under FOIA that is not to be made public? It's antithetical. I don't, and when the judge says You made that argument to the district court, I assume, right? The argument was made by Attorney Chang, yes. And in fact, the court statement in its order that somehow Chang did not respond to him or didn't cite any cases, keep in mind that this wasn't raised by the government, so it was thrown at Attorney Chang at the hearing without him even knowing it was coming. Suddenly the court says, oh, we're going to disregard 157 emails because of this offer of settlement. And what Chang said is, Your Honor, pardon me, but the statute requires a public disclosure. Now, I don't know how much more he could have said to the court to make clear that this was not a FOIA disclosure and that all 175 of these emails were still subject to the court's review. What was Judge Kern's response to that? Basically, they didn't argue mootness. We didn't get a response from them on mootness until the answering brief. And then, not surprisingly, they just adopted Judge Kern's argument, which of course they didn't make below. Now, we're appellate, so they don't have to raise these issues below, but the obvious point is that they knew this was not a FOIA disclosure. The only thing I can think of is that the reason they went on a non-FOIA disclosure was not because that they were concerned anymore about these emails, because I think they changed their mind, which is why they should be subjected to attorney's fees. I think their concern was that if they made this a FOIA disclosure, they would be susceptible to attorney's fees under the new 2007 version of the attorney's fees statute, which says that if it's caused by the filing of the complaint that they owe attorney's fees just the same as if it was ordered by the court. That would only be true, I mean, in a sense, the two things stand and fall together. Either they're going to come up here and tell us that as far as they're concerned, he can show them to anybody, in which case it seems to me it is a FOIA disclosure, or they can say the difference is he can't, in which case it's probably, it's not a FOIA disclosure. So either, if they remove the restriction, then you might, you'd have a fees argument, and if they don't remove the restriction, then you're, you have an argument that it's not a FOIA request. Well, I mean, that's essentially what I argued in Part 1 of the opening brief. I said, I mean, they're arguing out of both sides of their mouth. On the one hand, they're now saying, oh, it's moot, and of course if it's moot, then they turned them all over and it was a FOIA disclosure, and therefore my client gets fees. But on the other hand, they're saying, we don't owe any fees because we never, we never required to do this in the first place. We just made this administrative decision, whatever that means, to turn them over three years after the complaint was filed. Your Honor, I appreciate your question, but you, in your last question, you just read to me or quoted to me the parts of the hearing where the lawyer said not for public disclosure. I don't know how you can more clearly say it's not a FOIA disclosure. And they, by the way, also say that. We didn't want to turn these over under FOIA. Before your time runs on you entirely, could you address these remaining either 12 or 9 emails? Yeah, well, the only, and I'm not sure what I need to address, because the second appeal they've tried to sabotage again. But let's focus on Exemption 6, because that seems to be all they think is left. And all I can do with Exemption 6 is read to you from VA Directive 6001. VA employees do not have a right, nor should they have an expectation of privacy while using any government office equipment at any time, including accessing the World Wide Web or using email. By using government office equipment, VA employees imply their consent to disclosing the contents of any files. Now, the concern I have, your Honor, is there's a statement by Judge Kern in his order that says, well, I know about all that, but so what? That's different, apples and oranges. He does not cite any cases for that. He cites no cases, any, and there's a lot of FOIA litigation, as your Honor is aware of. There's no cases cited in the answering brief or by the judge below that says that if there are regulations, and there's a big FOIA section at VA, like there is at most government agencies, that expressly say that email is not private. Now, how they can say, on the one hand, that they use government officials, VA officials use VA computers to send VA emails to VA employees and discuss VA issues is somehow not public or that they have some expectation. Privacy makes no sense. I don't understand why the judge disregarded it. He didn't cite any authority to disregard it. He just simply said there's no public interest. Now, let's focus on that. Well, your time is running. Do you want to save some time for rebuttal? Yes, thank you. No, I'm good. Charles Scarborough, Department of Justice of the VA. Let me dispel any confusion here. Just as in the district court, the offer to view the 157 emails that remain in dispute was part of an attempt to narrow down what was really in dispute here. There were enormous requests made for internal emails at the VA, not just dealing with Mr. Yonemoto. And it's important to understand that the things that are in dispute at this point, as the district court found, none of this stuff pertains to Mr. Yonemoto at all. This is all emails that are responsive to his broader requests that contained words like interview, feedback, Hawaii, words that are very commonly used. And you can see that in his FOIA request at Record Excerpt 2. Where did this idea of mootness come from? Well, the idea of mootness, I think, comes from a very practical concern. I mean, who raised it? The district court was the one that injected the mootness idea. But actually, I should step back. The Court of Appeals in its prior appeal, when it heard this appeal, raised the mootness concept. You said in the district court, and you said in your brief here, that it's correct that the, that I don't know what you said here, but you said in the district court that receiving the emails in this capacity at the VA employee does mean that he can't get. Yes, that he's restricted. It was not a FOIA disclosure. And what, here's the point. So if it's not a FOIA disclosure, isn't that the end of the matter? Isn't that not moot? No, Your Honor. And part of the reason is because just the disclosure that was made. Understand that this is a litigant who's going on many fronts. He's trying to get documents. Well, no, no, but it's important to understand the context here. Because in the prior appeal here, what happened was there were, it was an interlocutory appeal under 1292B. There were four specific documents at issue. And as part of an EEOC case proceeding contemporaneously, there was a big disclosure of production of documents. All right, but a disclosure of documents in discovery is not restricted unless it's restricted. And it wasn't restricted, as I understand it. So it was not restricted. I'm not entirely sure that's correct, Your Honor. I guess. This is correct. There's case laws that are saying if somebody, if you get something in discovery, you can run down the street with it and give it to the newspaper. Well. Unless, unless there's an order saying you can't. Well, again, I mean, when this court dismissed the prior appeal as moot, I mean, it wasn't looking at whether there had been a FOIA disclosure. It was looking at whether he had gotten the materials. Again, I think what the district court judge was trying to deal with was. I frankly find your argument unbecoming of the government. I don't understand it. It has, it just doesn't make any sense at all. I mean, a FOIA is a, we have plenty of case laws saying that a FOIA request, a FOIA disclosure means the world gets it. And anything less than that is not a FOIA disclosure. So what is your argument? I understand, Your Honor. And we did not make a FOIA disclosure below. We said, look, we've put, there was an effort. There were many, many emails in dispute. He received many, many of those emails through other means, through EOC cases and so on and so forth. That's an important context here. We were trying to figure out, what remains in dispute? What do we really need to fight about? And essentially, when we offered to give him the $157. There's nothing wrong with what you did. And if he had accepted it, it would have been fine. But once he didn't, and the government, and, and the court, without your even asking you to, said it was moot, and that's incorrect. I don't know why you're standing here defending it. Well, again, we do think it's a defensible position, and, and we do think that. Wait a minute, I want to make sure I understand. You think it is a defensible position that it is moot because you handed these emails over to him with the restriction, even though it's a FOIA request? Because as a practical matter, what we did was give him the best bond index available. We said, go look at the emails yourself with your attorney.  We said, we'll give you these emails. You're, you're not, I don't think you're engaging with the question yet. He's made a FOIA request. If the FOIA request is granted, he receives the information, and he can broadcast the information to the world. I understand. You gave him the emails with restrictions on the uses that he could make of them. Yet you're arguing that his FOIA request is moot. I don't get it. Well, again, the, the offer to give, give him the emails was made as an effort to narrow the range of issues. That's irrelevant. That's not the question that's being asked. Okay. Well, I, again, when, when he looks at the, just as if we had produced a bond index. Let me try it this way. Just, if we had produced a bond index detailing these emails, I mean, we gave him essentially that. And said, go look at them, and let's figure out what we still are fighting about here. You know. And he didn't come back with anything. You know, let me ask this again, and I'm trying to ask the same question as Judge Berzon was asking. I'm trying to answer it. The emails, now it's 100, it's 157, is that the number? Yes. Can he, as far as you're concerned, broadcast them to the world at this time? No, your honor, he cannot. And if he got them as a FOIA request, pursuant of his FOIA request, could he do that? Yes, he could, your honor. Then it's not moot. End of, end, end of game. Well, I, I, I don't get what the argument is. Well, again, it's, it, it. He may or may not be entitled to them under FOIA, that's a different question. But he's asked them under FOIA to get a certain right to distribute to the world. He doesn't have that right. I understand, your honor. And, and I'm trying to suggest an alternate grounds in which the, what the district court did can be affirmed. And what I was trying to get to was that when you give a, a, a FOIA litigant. No, but you still haven't answered his question. Is this your position, it, yes or no? Is it moot? It is our position that it's moot. And, and we think that that, in some respects, is, is consistent with the court of appeals prior ruling in this case with respect to the documents that were disclosed in the EEOC proceedings. In other words, he received those in his capacity as an, as a VA employee as well. And so there's similar types of restrictions there. And, and you came all the way out from Washington, D.C. to argue that this is not moot. And this is all you can say. I mean, I, I just don't get it. Well, again, your honor, we have an alternate basis. And that's, that we've given him the best Vaughn index available. And he hadn't come back with anything about any of these emails. And there's some back and forth. This was part of the, an effort to collaborate with the plaintiff and narrow the range of material in dispute. Most of the material that he is concerned with has fallen out of the case. The district court never reached the, any issue with regard to any of the 157. Correct, your honor. So we're not in any position to do it, it seems to me. But second of all, the, what you gave him, as I understand it, was the opportunity to, to read these emails, not to take any notes, and not to take any copies, and. No, he could have taken them home. He could have taken all the emails. We gave him, we offered to produce the emails to him. Well, that's his capacity. In his capacity as, as a VA employee. Yes, your honor. But that, that was a settlement proposal. But you also let him, you, you're telling me that you would have given him these and let him take them home and let him continue to litigate. Yes, that, well, that was, that was the, the offer. Again. I thought the offer was that he could come and look at them. And I gather he did come and look at them. But just in the office and momentarily. But if he wanted to take them home and have them, that, that was a settlement of a. No, it was an offer to produce the emails. And again, it was the idea being, was we were trying to narrow the range of issues in dispute. And so, the, the idea was, if there are any of these that you really care about. Because the, the motive here is to support the claims of disparaging remarks and discrimination by the VA and so on. And so, let's narrow the range here. You go, the best way to do that is for you to go and actually look at these emails. Did he look at them? Yes, he looked at them with his attorney. I thought he looked at them with a restriction that he couldn't copy them and he couldn't. No, Your Honor. That is not my understanding of what occurred below. And I will advise the court promptly if that's incorrect. And. We offered to produce those emails. Or he could have taken them home. That is not at all my understanding. Well, we offered to produce the emails to him in his capacity as a VA employee. We believed we had proper exemption to, primarily exemption to. And that was not in the guise of a settlement. In other words, he could have taken those home and still gone and litigated. I don't, I'm not sure that we, again, I don't know. I was not litigating. But I'm not sure that we had made a determination as to what that was leading to. The idea was, the whole enterprise below was trying to narrow the range of emails in dispute. At this point, we were down to emails that did no way pertain to Mr. Yonemoto. We were talking about emails that were largely trivial gossip among VA employees on the email system. And so, we were trying to figure out what. Sorry, Jim. I'm trying to figure out then. So, your argument is, this is moot because he doesn't want them anymore. Is that the argument? In essence, well, that when we gave him the best Vaughn Index ever, we said, go look at the emails. He didn't come back and say, here's a reason why your Exemption 2 claims or your Exemption 6 claims don't pertain to any of these emails. He just sort of dropped it. In one way, it's not the best Vaughn Index ever because you didn't make any specific representations why any particular email was within Exemption 6. All you said is these are within Exemption 6. Well, no, actually, we did. We actually described them as well. That's at Record Extra 5. There's a long, detailed list, and it's attached to the Miyamoto Declaration, which was filed as a supplement. Let me ask my question again. Yes. Are you arguing this is moot because he doesn't want them anymore? Is that what all this, we tried to narrow it to dispute things about? Yes, Your Honor. And so, are you saying he doesn't want them anymore? Well, again, that's something that you have to ask him. I'm asking you because I'm still trying to get my hands around this mootness argument. Sure. It appeared that he did not want them anymore because he did not come back with any specific response after looking at them, actually seeing the documents. Are you arguing then a waiver? Because he seems now to be saying that he wants them. Yes, Your Honor, and that was the alternate grounds for affirmance that we have. It's in our brief. It's the other basis for affirming the mootness ruling. I understand, Your Honor, the mootness was something that came up from the district court judge. However, this court may affirm on alternate grounds that are readily apparent in the record, and that's the alternate grounds that we are seeking. You can call it waiver, or you can call it a failure to come back with sufficient proof. Well, how is it a waiver? This is all like sort of outside the processes of how you litigate a lawsuit. Sure, it's maybe a good faith attempt to settle, but if a party rejects a settlement, how can that be a waiver? Well, I'm not sure. That's what he did, right? In effect, he rejected your settlement offer. Well, no, Your Honor, because a FOIA litigant… He accepted it? No, Your Honor. What I'm trying to say is that when you have an enormous broad range of requests, and you're down to materials that the person may or may not want because they're primarily interested in disparaging remarks about him, and you're saying, let's figure out what we're really going to fight over. Here are the e-mails. Go and look at them, and then come back, and we're going to move for summary judgment. He says, go to hell. I want to go to court. Well, I understand that. Do you weigh his argument? No, Your Honor. If he does that, he then has to come back and say, here's why Exemption 2 doesn't apply to these e-mails. He doesn't have to say that. Yes, he does. He doesn't have to say it to you in the settlement process. No, not in the settlement process, Your Honor. Absolutely not. He has to say that in response to our summary judgment motion on Exemption 2 grounds, which is what we moved for below. Well, Yonemoto says in his brief… But the district court never reached that. I understand, Your Honor. The district court never reached that, and we're suggesting an alternate grounds here for affirming the district court's decision on Moonis. Well, Yonemoto says in his brief that he was not allowed to take notes or make copies without promising they wouldn't be made public. That's his representation. I don't know what his authority for that is. You say you don't know. Do you think it matters? Do I think it – well, I think what matters is that we offered to produce these e-mails to him in his capacity as a VA employee. In other words, we did not think that we were obliged to produce them under the FOIA so he could disclose them to all. They are routine material that falls squarely within Exemption 2. That's the merit to the case. What's that? That's the merit to the case. I understand that, Your Honor. And I'm saying that we're not in any way giving up the merit to the case. And what the district court did was upon Mr. Yonemoto looking at these e-mails, not coming back with anything specific about any of them, you know, the district court said as a practical matter, look, we're kind of done here and ruled on Moonis. Now, we're suggesting that can be affirmed in the form of a waiver sort of argument. And the point here is that eventually the tail starts to wag the dog here. Why should we affirm on that basis when, as I read what the district court did, the district court thought this was genuinely moot in the sense that getting them with these restrictions was the equivalent of getting them under FOIA, which is clearly not right? Maybe, again, it's hazardous to speculate on what the district court was thinking. We did not make a mootness motion below. We think it's defensible primarily because it is analogous to what this court did in the prior appeal with the EEOC documents. With regard to the remaining ones, you now come forward with three more of them. The Exemption 2 documents, which are by definition documents that nobody really cares about. I mean, they're low-to-trivial internal e-mails. Okay. One wonders why you didn't come forward with them three years ago. But in the meanwhile, so there's a request in Petitioner's brief for attorney's fees with regard to that and maybe ultimately with regard to these 157. I gather that no one's litigated yet in this case how the 2007 amendment would apply. No one has said word one about attorney's fees below or until really they were applied to. We shouldn't worry about it. You'll worry about it if you get back to the district court. Yeah, the attorney's fee issue is something where quintessentially the district court exercises discretion. The district court sees how much the party has been a prevailing party, has been with the litigation. Again, we think we have proper defenses on the 157 e-mails. You know, I don't know whether there will be a discretionary discourse. Is there a position that government has taken elsewhere as to how this 2007 statute applies? I.e., does it apply to a case like this once, which was pending at the time, but in which there were fees incurred after 2007? My understanding is it applies prospectively when the disclosure is made. In other words, the disclosure that makes the person a prevailing party would be the triggering event. So post-2007. So it would apply here? Yes, I believe so, Your Honor. We haven't disputed that. We don't think, however, that there is the type of public benefit conferred. And that was the gist of our 2018. I understand that. And that would have to be. Sure, absolutely. There's no basic dispute as to whether it would apply if there were a disclosure that was covered. I don't think so, Your Honor. But, again, that would be something that would be litigated properly in the district court when a request for attorney's fees was made. But I don't anticipate we would take that position. Okay, thank you, Your Honor. We took the government over a little bit. Why don't we give you two minutes? Yeah, I'd like to address the turnover of three e-mails during the appeal. There's no restrictions on those three e-mails. They're clearly a FOIA disclosure. And I see absolutely no reason whatsoever why my client shouldn't get attorney's fees. But that's really not our – I mean, I understand that argument. With respect, Your Honor, it is argued in both the opening and the reply briefs. Well, I know it is, but it would seem appropriate to just have the district court. Yes, but what I would like this court to do, obviously, is note, first of all, there's been no defense of those Exemption 2 and Exemption 5 claims. Now, if we go back down, Your Honor, and ask for fees for them turning over three, doing a FOIA disclosure during the pendency of the appeal, and, frankly, doing it not in compliance with the rules, they file an answering brief, which they claim – they send a hard copy to me, which they claim is identical to the one filed online, and it has all sorts of interlineations in it, even though there's a certificate saying it's the same thing. If you look at the red copies you have, you'll see there are changes in there. My point is this. They turned over three during your appeal, and they did not argue at all that 2 and 5 apply. Why should we have to go back down below, argue that 2 and 5 apply, assuming we apply the D.C. attorney's fee standards, which, of course, haven't been adopted in the Ninth Circuit? And you asked, by the way, about the 2007 changes. The 2007 changes just essentially resurrected the catalytic effect of the second half of attorney's fees. They turned over three to this court during appeal. There's nothing else to look at. They made the flat-out statement that they still are taking a position that 2 and 5 apply, but they didn't argue it in their brief. Excuse me, but the litigation is ongoing, assuming, as it appears likely, we're going to find it does not move. That only covers 157, Your Honor. There are still 12 on this court. I'm still talking. I'm sorry, Your Honor. Ordinarily, we determine attorney's fees when things are pretty much wrapped up. You don't do it piecemeal. Okay, these three emails, I get attorney's fees on those. 157, I don't know yet. Why don't we wait until the end of the litigation? Well, the concern I have is that we've appealed the decision on 9. They even think that there's 9 in front of this court. We've been arguing for the last four years that this is a public interest and that they have no right to privacy. That issue is still squarely in front of this court. There's no mootness issue on those 9. If you just send this back on a mootness issue and the judge rules again that there's no privacy right, my client's looking at a third appeal on this issue of whether or not there's a privacy right for VA officials. Maybe, just maybe the government will see the light. All right, so in other words, this court's not going to address the 9 remaining emails that are still in front of this court. There's no issue. I asked you specifically about them. All right. I'm happy to hear that. Thank you very much, Your Honor. Did you hear my question? Yes. And I understand that, and I appreciate the court's issue on mootness, but this is the second appeal. My client is a government bureaucrat. He can't afford to come up to the Ninth Circuit over and over again because of the games played by VA. It has just been outrageous the way they have operated this litigation. Well, I'm just speaking on behalf of my client. Any further questions? Thank you. Okay. Thank you very much. The case of Yanomoto v. Department of Veterans Affairs is now submitted.
judges: Tashima, Fletcher W. , Berzon